AO 91 (Rev. 02/09) Criminal Complaint

# United States District Court
## for the
### Western District of New York

United States of America

v.

DANIEL J. HAYS,

*Defendant*

Case No. 21-MJ- 4068

## CRIMINAL COMPLAINT

I, <u>Gregory Schmitter, Task Force Officer with Homeland Security Investigations</u>, the complainant in this case, state that the following is true to the best of my knowledge and belief:

On or about and between <u>April 27, 2021 and May 11, 2021</u>, in the Western District of New York and elsewhere, the defendant violated 18 U.S.C. § 2422(b), an offense described as follows:

the defendant knowingly, using a facility or means of interstate or foreign commerce, attempted to persuade, induce, and entice an individual who had not attained the age of 18 years, to engage in sexual activity for which any person can be charged with a criminal offense, in violation of Title 18, United States Code, Section 2422(b).

This Criminal Complaint is based on these facts:

**SEE ATTACHED AFFIDAVIT OF HSI TFO GREGORY SCHMITTER.**

☒ Continued on the attached sheet.

*Complainant's signature*
GREGORY SCHMITTER, Task Force Officer, HSI
*Printed name and title*

Affidavit and Criminal Complaint submitted electronically by email in .pdf format. Oath administered, and contents and signature, attested to me as true and accurate telephonically pursuant to Fed.R.Crim. P. 4.1 and 4(d) on:

Date: May 11, 2021

City and State: Rochester, New York

*Judge's signature*
MARIAN W. PAYSON
UNITED STATES MAGISTRATE JUDGE

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

21-MJ-4068

STATE OF NEW YORK     )
COUNTY OF MONROE   )     SS:
CITY OF ROCHESTER   )

I, GREGORY SCHMITTER, being duly sworn, depose and state as follows:

1. I am an Investigator with the New York State Police (NYSP). I am also a Task Force Officer with the Department of Homeland Security, Homeland Security Investigations (HSI). I have been employed by the NYSP since August 2007 and have been a Task Force Officer with HSI since December 2019. In my duties, I investigate crimes involving child exploitation, including violations of Title 18, United States Code, Sections 2422 (the online enticement of minors), 2251(a) (production of child pornography), 2252A (receipt, distribution and possession of child pornography), and 1470 (transfer of obscene matter to minors).

2. I make this affidavit in support of a criminal complaint charging DANIEL J. HAYS, with a violation of Title 18, United States Code, Section 2422(b), related to the attempted online enticement of a minor.

3. All information contained in this affidavit is based on my personal knowledge and investigation, my review of documents and records, and conversations that I have had with other law enforcement officers. Since this affidavit is being submitted for the limited purpose of securing a criminal complaint, I have not included each and every fact known to me concerning this investigation. Rather, I have set forth the facts that I believe are necessary to establish probable cause to believe that DANIEL J. HAYS, using a mean and facility of interstate and foreign commerce, did knowingly attempt to persuade, induce and entice a

person less than 18 years old to engage in sexual activity for which he could have been charged with a criminal offense, all in violation of Title 18, United States Code, Section 2422(b).

4. On April 27, 2021, an undercover law enforcement agent (the UC), commenced an investigation concerning individuals who use a particular social media application, "Application A," in order to engage in child exploitation crimes. Application A allows users to chat with others throughout the world via the Internet, which is a means and facility of interstate and foreign commerce. Application A is known to law enforcement as a medium through which perpetrators can trade child pornography and locate and chat with minors, among other things.

5. Users of Application A create profiles that are visible to other users. The user profiles often contain the user's photograph, name, age, and location. The UC's Application A profile contained a picture of a young female (who appears to be approximately 11 years old). The UC's outward profile stated that she was 18 years old and from Waterloo, NY. The caption at the top of the UC profile stated "Schools the worst". In order to register a Application A account, all users must list a date of birth, which would indicate that their age is at least 18 years old. Thus, in order to engage in undercover investigations on Application A, law enforcement must register a profile as if the UC profile is 18 years old. If a subject begins to chat with the UC profile, the officer must immediately advise the subject that the UC profile is a minor and is less than 18 years old (in this case the UC advised the subject that she was 11). If the subject retreats from the conversation after learning that the UC profile is a minor, the conversation between the UC and subject ceases. If the subject continues to engage in conversation with the UC, believing that the UC is a minor, then the conversation and investigation may continue.

6. On April 27, 2021, the UC received an Application A message from "d h". According to the Application A profile for "d h", he is a 41-year-old man, living in Yorkshire, NY. "d h's" profile contained two images that depict a white male between 35-45 years old. As described below, "d h" has been identified as DANIEL J. HAYS. The following conversation ensued at that point:

- "d h" wrote, "Hey there" (the message also contained a kissing and smiling emoji), and "How are you doing?"

- The UC responded on April 28, 2021, stating "Good how r u"

- "d h" responded "To be hones I am really horny" and "Would you be willing to get naughty with an old guy like me?"

- The UC responded on April 29, 2021, stating "How old r u? *Im 11.* If u don't wanna talk I get it" (emphasis added).

- "d h" replied, "Oh dang! You gotta be really careful on a site like this…. Lots of people looking for sex and naked pictures (unless that's what you are looking for)"

- "d h" went on to state, "I'm looking for a friend with benefits or a hookup (sex) or someone who is willing to send sexual pictures (not you unless you really want to)"

- The UC responded, "Like u probs don't want that w me cuz Im littler than u"

- "d h" stated, "If you are ok to send pictures like that, you can"

- The UC responded "Like i dont send those 2 boys I nevs met b4. Like u could b using me"

- "d h" went on to say, "I wish you were older, I would ask if we could meet"

3

- The UC replied, "Oh sorry. I wish I was. Ill b 12 in June", and "U would really wanna meet me?"

- "d h" stated "Yeah I can't tell your age by picture alone" and, "If we were to meet, how would we? Your parents must have a tight leash on ya"

- The UC responded "Oh yea sum guys say I look younger than 11 but I really am" and "I dont live w my parents. i live w my grandma"

- "d h" responded "Ok would you really want to meet up with sex starved guys?"

- The UC responded "Oh idk i nevs done that b4"

- "d h" went on to request that the UC send pictures of her "naked body." "d h" then sent the UC a picture of his erect penis.

7. In response to the photograph of "d h's" penis, the UC sent a picture that depicts the same young female that was depicted on the UC's public profile page. The female appears to be approximately 11 years old and is clothed in a red/pink shirt and black pants holding a cellular phone. In response to receiving the UC's photograph, "d h" replied, "You're beautiful" and, "Maybe a pic of you in just under-wear? I'd really prefer naked, but underwear would be cool too" and, "Would you be against having sex since you're so young?". Under New York State Penal Law Section 130.35(4), it is the crime of Rape in the First Degree for an individual greater than 18 years of age to engage in sexual intercourse with an individual less than 13 years of age.

8. In response to the defendant's question regarding sex, the following conversation ensued:

- The UC replied "Like Ive never had sex but i think i would try it if the boy was nice and teached me"

4

- "d h" replied "I am a bit older than you, but would teach you if we could get somewhere that we're alone". "d h" then sent two additional pictures of his erect penis.
- The UC asked "d h" to switch their communications from Application A to text messaging.
- "d h" replied, "I'll give you my number, but I would want to see you naked here first baby so I can feel comfortable"
- "d h" stated "If you're serious about wanting me to teach you how to have sex, let me know a good time and address"
- The UC replied, "Idk i might wanna meet but im kinda scared. Like can we talk a few more days b4 we decide that"
- "d h" provided his phone number as 716-XXX-XXXX and advised that he had sent the UC a text message.

9. On April 29, 2021, the UC received a text message from 716-XXX-XXXX, in which "d h" stated that his actual name is "Dan." At that point, the following conversation ensued via text message:

- The UC stated "Like u sure u dont care Im 11. Im kinda nervus talkin 2 a older boy. Ike im afraid u r gonna think im dum"
- "Dan" then confirmed his age is 41, and asked, "if we do decide to meet, where would we?"
- The UC replied, "Like idk i nevs done this b4. It would have 2 be when gma is working"
- "Dan" stated "I'm still nervous about meeting but will meet you"

5

- The UC replied, "Why r u nervus??? U r the older boy have done it b4"

- "Dan" replied, "Not with your age tho... That's why (plus I'm kinda shy)"

- The UC replied, "Do u want me 2 leave u alone?? Sorry 😔"

- "Dan" replied, "No no no... Still want to meet to teach you how to have sex (if you want to)."

10. Between April 30 and May 2, 2021, the conversation continued between "Dan" and the UC via text messaging and involved neutral and semi-sexual topics to include masturbation. On May 2, 2021, the conversation became increasingly sexual in nature:

- "Dan" stated "We'd have to actually meet up sometime if you were down to"

- The UC replied "Like im kinda nervus but like i think id wanna if u wanna"

- "Dan" stated, "I'm nervous too... Where would we meet tho?"

- The UC stated "Like im kinda nervus u r gonna not like me when u see me *cuz im 11*. Like u 4 reals dont care right??" and, "Like u dont care im littler right. Sorry u didnt answer and thats what im nervus bout. Dont want u 2 get here and think im ugly 😔" (emphasis added).

- "Dan" replied "I'm nervous about the same thing" and "Could meet and see if you like me"

- "Dan" then inquired about the child's grandmother's work schedule and requested naked pictures of the child in order that "Dan" could be certain that the child was not the "police" and that he was not being "setup."

11. The conversation continued in which the following exchanges occurred:

- "Dan" said "Maybe meet up then? If so, what time?" and "also, ikr we'd be nervous about it but would you want to mess around with each other then?"

6

- The UC replied "Oh ummm like yea i guess if u teach me. Like what would we do"

- "Dan" replied "Touch each other and maybe suck on and kiss each other's bodies... Idk. I'd be a first time teacher"

- The UC stated "Wdym suck"

- "Dan" replied "Like a lollipop I guess you could say"

"Dan" went on to ask the UC if she has ever masturbated and advised the UC that she could look up a video to learn how to masturbate.

12. Between May 2, 2021 and May 8, 2021, the conversation became somewhat sporadic, and often involved neutral topics. On May 8, 2021, the conversation again became sexual in nature as follows:

- "Dan" stated "I've been looking for someone to have sex with"

- The UC responded "Sorry" and "Like you don't like me any more do u"

- "Dan" responded "Still do like you... Just unsure about meeting up unless I know for sure that you want me to teach you how to have sex"

- The UC responded "Well like i do but only if u really like me. I dont want 2 feel stupid if u dont like me"

- "Dan" responded "It's just that I have to feel more comfortable meeting... If you like to have sex (if I teach you) then we can meet again."

- The UC responded "Like ok. U wont think im dum if i dont knkw what 2 do"

- "Dan" replied "The only thing that holds me up from meeting is that you're uncomfortable to send a sexy picture of you... I know someone who went to meet up with a girl and it turned out that it was a police officer..."

7

- "Dan" went on to say "All i ask is a topless pic or a pic of your bra Then we can meet as soon as possible" and "Please understand where I'm coming from too though... Just asking for some kind of proof that you're not a cop (or working with them)"

- The UC replied "How can i work as a cop im 11! I sent u tons of pics and theres no cops here. How do i know u arent 1 trying 2 get me in troubs"

13. "Dan" and the UC proceeded to plan a meeting in Waterloo during the week of May 10, 2021. On May 8, 2021, while planning the meeting, "Dan" and the UC discussed the child's grandmother's work schedule, where they could meet, and the child's appearance. In that regard "Dan" asked "Just out of curiosity... How tall are you?", to which the UC replied "Like 5 feet and 1 inch but i have gottened measured in a while why." "Dan" responded "Ok... So you're not really "little" just young".

14. On May 8, 2021, "Dan" went on to say" Hopefully it'll be a warm day when we meet... Then if you had a skirt or dress on i can use my fingers to see if you like the motion of going in and out of your private area". Pursuant to New York State Penal Law Section 130.65(4), it is the crime of Sexual Abuse in the First Degree for a person over the age of 18 years to subject a person less than 13 years to sexual contact, whether directly or through clothing.

15. Between May 8 and May 10, "Dan" and the UC planned to meet in Waterloo, NY near the child's residence, while the child's grandmother was working. During these conversations the UC mentioned to "Dan" that she likes "reeses' candy and "Dan" indicated that he would bring them to her when they met. The meeting was then scheduled to take place on May 11, 2021, at a laundromat near Virginia Street in Waterloo. On May 11, 2021,

"Dan" sent the UC several text messages indicating that he was on his way to the meeting place. Earlier in the conversations, "Dan" indicated that the drive from his home to Waterloo was approximately two hours. "Dan" and the UC discussed meeting at the laundromat, then proceeding to the child's residence in order to avoid attracting attention from the child's neighbors.

16. A review of records available to law enforcement indicate that the phone number "Dan" was using to text message the UC has an associated subscriber of DANIEL J. HAYS. According to New York State DMV records, Daniel J. Hays has a valid driver's license with a date of birth of xx/xx/1979, and an address of xxxx Route 39 Bliss, NY 14024. The DMV photograph for DANIEL J. HAYS matches the photographs that "Dan" and "d h" sent to the UC in the aforementioned conversations.

17. By approximately 11:30 am, law enforcement was pre-positioned near the meeting place near the laundromat in Waterloo, where the UC and "Dan" were scheduled to meet. Shortly thereafter, HAYS was observed in his vehicle, a 2002 black Chevy S-10 pickup truck. He was apprehended by members of the New York State Police while seated in his vehicle. Subsequent to the arrest, police located Reece's chocolate peanut butter candy inside HAYS' vehicle, consistent with HAYS' conversation with the UC.

18. HAYS was then transported to the NYSP Waterloo station, where he was read *Miranda* warnings. HAYS indicated that he understood his rights, and that he wished to waive his rights and speak with investigators. During the ensuing conversation, HAYS told investigators, in sum and substance, that he had been communicating with an 11 year old female through Application A and through text messaging. HAYS admitted that he believed the child was 11 when he chatted with her, and that he traveled to Waterloo in order to meet

the child for sexual activity. HAYS further admitted that it was his intent to engage in various sexual acts with the child, to the extent that the child was comfortable, to include sexual intercourse. As indicated above, it is a violation of New York State Penal Law Section 130.35(4) (Rape in the First Degree) for an individual 18 years of age or older to engage in sexual intercourse with a child less than 13 years old.

19. HAYS' was found to be in possession of a LG phone, which he indicated he used to communicate with the minor. Based on my training and experience, LG phones are manufactured primarily in Korea and Vietnam. LG phones are not manufactured within New York State. Thus, in addition to using the Internet to communicate with the UC, which is a means and facility of interstate and foreign commerce, the phone that the defendant used to communicate with the UC also traveled in interstate or foreign commerce.

20. WHEREFORE, based on the foregoing, I respectfully submit that there is probable cause to believe that DANIEL J. HAYS, using a facility or means of interstate or foreign commerce, attempted to persuade, induce, entice or coerce an individual who had not attained the age of 18 years, to engage in sexual activity for which any person can be charged with a criminal offense, in violation of Title 18, United States Code, Section 2422(b).

_____
GREGORY SCHMITTER
H.S.I. TASK FORCE OFFICER

Affidavit submitted electronically by email
in .pdf format. Oath administered, and
contents and signature attested to me as
true and accurate telephonically pursuant to
Fed. R. Crim. P. 4.1
On May 11, 2021.

_____
MARIAN W. PAYSON
United States Magistrate Judge